United States District Court
Southern District of Texas
**ENTERED**
June 15, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Anthony Carmona, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-20-3922 |
| | § | |
| Steven Forrest et al. | § | |
| *Defendants*. | § | |

## MEMORANDUM, ORDER, AND RECOMMENDATION

This motor vehicle accident case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). Pending before the court are several motions. In a previous order, ECF No. 49, the court denied as moot without prejudice Defendants' motion for partial summary judgment on Plaintiff's claims related to complex medical conditions, ECF No. 43, and Defendants' motion to exclude both evidence of those complex medical conditions and evidence of any damages resulting from those complex medical conditions, ECF No. 42. Defendants now move to re-urge those motions. ECF No. 72. The motion to re-urge is **GRANTED**. The court recommends that Defendants' motion for partial summary judgment, ECF No. 43, be **GRANTED**. Defendants' motion to exclude, ECF No. 42, is **GRANTED**.

Defendants filed motions to exclude evidence of medical charges from International Center for Neuroscience, Altus Houston Hospital, and Imperial Surgery Center. ECF Nos. 61, 62. To the extent that any of those charges remain at issue, given the court's disposition of the motion to exclude evidence of Plaintiff's complex medical conditions, the motions to exclude medical charges are **DENIED** without prejudice to re-urging at the time of trial.

Plaintiff's motion to exclude testimony of Dr. Mathew Greenston, ECF No. 73, is **DENIED.**

### *1. Background*

This case arises from an April 4, 2019 motor vehicle accident. ECF No. 13 at 2. Plaintiff, Anthony Carmona alleges that Defendant, Steven Forrest was driving a vehicle owned by his employer, Freer Trucking, Inc. *Id.* According to Carmona's Amended Complaint, Forrest "failed to control his speed and distance causing him to rear end the Plaintiff's vehicle. As a result of the accident, Plaintiff sustained serious personal injury for which he sought the care of medical professionals." *Id.* In his deposition, Carmona testified that Forrest hit him four times from behind. ECF No. 43-3 at 4 (hereafter "Carmona Dep.") 105:7. Carmona claims medical expenses of $434,886.81 and compensatory damages of $1,453,180.  ECF No. 45-1 at 6–7.

Photographs of the vehicles after the accident show minimal to no damage to either vehicle. ECF No. 43 at 2–3; ECF No. 43-2. Carmona called the police to the scene. Carmona Dep. 105:12. An officer arrived and instructed the drivers to move their vehicles to the side of the highway. *Id.* at 105:12–15. The responding officer did not issue any citations and stated that no citations were necessary. *Id.* at 106:5–10, 107:10–12. The officer did not prepare a crash report or otherwise investigate the accident. *Id.* at 107:21–22. Carmona prepared his own crash report, however, and described his sole injury as "back pain." ECF No. 43-5 at 1. There is no evidence that Carmona suffered broken bones, lacerations, or any other visible injuries at the time of the accident.

Immediately after the accident, Carmona drove himself to an emergency room. Carmona Dep. 113:19–114:1. Carmona does not recall much about his visit. He cannot recall the length of his visit, what examinations were done, or what advice the doctors gave him. *Id.* at 114:8–115:12. When asked during his deposition whether the ER physicians performed any examinations, Carmona responded "I don't exactly remember what they did because it was a long time ago. But they

did check me out. I don't remember. I don't have the paperwork for that anymore . . ." *Id.* at 114:10–14. When asked whether the ER sent him to see other doctors, Carmona testified "I think they did," but he could not remember which ones. *Id.* at 115:1–2. After leaving the ER, he went home to rest and soon thereafter called an attorney. *Id.* at 116:5–21; 117:4–15.

Carmona sought treatment at Rossel Medical Care. Carmona Dep. 118:8–13. His first visit there was four days after the accident—April 8, 2019, during which he complained of lower back pain and neck pain. *Id.* at 118:17–20; ECF No. 43-6 at 2. X-ray and MRI examinations were performed, and, according to Carmona, his doctor told him that "they'd seen damage." Carmona Dep. 119:10–25. His diagnoses from Rossel Medical Care included cervical and lumbar sprain and strain. ECF No. 43-6 at 2. He was prescribed a numbing cream and was referred to other providers. Carmona Dep. 120:24–25; 121:6–8. He was offered pain medication but refused it. *Id.* at 121:2–5.

Rossel Medical Care referred Carmona to receive injections from Dr. Shabrez Tariq at the Houston Spine and Joint Pain facility. Carmona Dep. 121:16–21. Dr. Tariq did not recommend any limitations on working or driving. *Id.* at 123:16–23. Carmona also received chiropractic treatment over a period of several months. *Id.* at 122:9–17. According to Carmona, he went to several doctors, and received several treatments, including injections, some of which he claims made his conditions worse, and electric shock treatments. *Id.* at 125:4–22; 130:18–131:7.

 More than a month after his accident, on May 8, 2019, Carmona underwent MRI examinations of his lumbar and cervical spine. ECF No. 43-7. The lumbar spine MRI revealed, among other things, straightening of the lumbar curvature, fluid in the facet joints, disc herniations, and an acute central annular tear. ECF No. 43-7 at 2–3. The cervical spine MRI also revealed straightening of the cervical curvature

and disc herniations. ECF No. 43-7 at 4–5.[1] Carmona underwent extensive treatment for his injuries, including injections in his lower back and surgery. Carmona Dep. 122:1–4, 126:14–15; ECF No. 43 at 5–6; ECF No. 45-1 at 6.

Carmona filed suit in state court and Defendants removed the case to federal court based on diversity jurisdiction. ECF No. 1. The court entered a scheduling order on February 11, 2021, ordering, among other things, that Plaintiff disclose experts by September 30, 2021, and that discovery be completed by December 31, 2021. ECF No. 12. On December 23, 2021, Defendants filed their motion to exclude evidence, ECF No. 42, and motion for partial summary judgment, ECF No. 43, both of which sought to exclude evidence of Carmona's diagnoses and treatment for medical conditions diagnosed on or after May 8, 2019. ECF No. 43 at 4; ECF No. 42 at 5. In both motions, Defendants argued that Carmona had not disclosed any experts that would establish causation for his injuries. ECF Nos. 42–43. In response to the motions, Carmona sought leave to amend his expert designations. ECF No. 45. Plaintiff attached to that motion a proposed designation of expert witnesses. ECF No. 45-1. The court granted the motion for leave to amend and accepted the proposed expert disclosure. ECF No. 49 at 3. The court ordered that Carmona would not be granted further leave to amend his disclosures. *Id.* The court also reopened discovery to permit Plaintiff's experts to be deposed and to allow Defendants to designate rebuttal experts. *Id.* The court denied the motions for partial summary judgment and to exclude as moot without prejudice to re-urge them later.[2] *Id.*

---

[1] These diagnoses and the subsequent treatment therefor are the subject of the motion to exclude evidence, ECF No. 42, the motion for partial summary judgment, ECF No. 43, and the motion to re-urge those motions, ECF No. 72.

[2] The court notes that there were no objections to the order.

### 2. *Defendants' Motion for Partial Summary Judgment and Motion to Exclude Evidence*

Defendants have moved to re-urge the motion for partial summary judgment, ECF No. 43, and motion to exclude evidence, ECF No. 42. ECF No. 72. That motion is **GRANTED**. Both re-urged motions argue that: (1) expert testimony is necessary to prove that the complex medical conditions diagnosed on or after May 8, 2019, were cause by the accident; (2) Carmona does not have expert opinions or other evidence to prove causation; and (3) as a result, evidence of Carmona's complex medical conditions diagnosed on or after May 8, 2019 should be excluded and summary judgment should be granted on Carmona's claims premised on those medical conditions. *See* ECF Nos. 42, 43.

### A. *Legal Standards*

#### i. *Expert Evidence of Causation*

A plaintiff in a personal injury case must "prove that the conduct of the defendant caused the event and that this event caused the plaintiff to suffer compensable injuries." *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015). If the plaintiff seeks recovery of medical expenses, he "must show both 'what all the conditions were' that generated the expenses and 'that all the conditions were caused by the accident.'" *Id.* (quoting *Guevara v. Ferrer*, 247 S.W.3d 662, 669 (Tex. 2007)).

The general rule in Texas "has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Guevara*, 247 S.W.3d at 665. There is an exception, however. Non-expert evidence of causation may be sufficient for "overt injuries such as broken bones or lacerations" as well as certain types of pain and similar "basic conditions following an automobile collision." *Id.* at 667–68. Lay causation testimony is adequate when "general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Id.* at 666. The lay

5

testimony must establish a sequence of events providing a "strong, logically traceable connection between the event and the condition." *Id*.

Recent Texas intermediate courts of appeal have made clear that conditions of the back and spine such as cervicalgia, lumbalgia, lumbar radiculopathy, and herniated discs "are neither common nor the type of basic injuries for which expert testimony regarding the causal connection between an occurrence and a physical condition is unnecessary." *Lara v. Bui*, No. 01-21-00484-CV, 2023 WL 2249205, at *6 (Tex. App.—Houston [1st Dist] Feb. 28, 2023, no pet.) (mem. op.) (collecting cases holding that diagnoses such as bulging and herniated discs, lumbar strain and neuritis, intervertebral disc disorders, and soft tissue back and neck injuries were outside common knowledge and required expert evidence of causation).

When expert evidence of causation is required, it is not enough to say that the expert is qualified and opines that the accident caused the injury. Rather, trial judges must scrutinize expert evidence for reliability. *Guevara*, 247 S.W.3d at 667 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995)). The Texas Supreme Court has made it clear:

> It is not enough for an expert simply to opine that the defendant's negligence caused the plaintiff's injury. The expert must also, to a reasonable degree of medical probability, explain how and why the negligence caused the injury. We have rejected expert opinions not grounded in a sound evidentiary basis: If no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection. A claim will not stand or fall on the mere ipse dixit of a credentialed witness.

*Jelinek v. Casas*, 328 S.W.3d 526, 539–40 (Tex. 2010) (cleaned up).

Moreover, temporal proximity alone does not meet the standards of scientific reliability or support an inference of medical causation.

*Guevara*, 247 S.W.3d at 667. "Evidence of an event followed closely by manifestation of or treatment for conditions [that] did not appear before the event raises suspicion that the event at issue caused the conditions. But suspicion has not been and is not legally sufficient to support a finding of legal causation." *Id.* at 668. Evidence creating no more than a surmise or suspicion is "no more than a scintilla and, in legal effect, is no evidence." *Id.* (quoting *Ford Motor Co. v. Ridgway*, 158 S.W.3d 598, 601 (Tex. 2004)).

### ii.    *Summary Judgment*

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the

record for material fact issues." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "[T]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Analysis

#### i.  Necessity of Expert Causation Testimony

Defendants' motions seek to exclude evidence of certain specific complex medical conditions diagnosed on or after May 8, 2019. ECF Nos. 42–43. The diagnoses and treatments that are the subject of Defendants' motions are identified specifically in the motions and the court's analysis is limited to those. *See* ECF No. 42 at 4–5; ECF No. 43 at 5–6 (listing abnormal straightening of the cervical and lumbar spine curvature, disc herniations, fluid in the facet joints, and acute central annular tear of the lumbar spine). Defendants are not seeking to exclude evidence of Carmona's pain complaints at the time of or shortly after the accident and/or related medical treatments. ECF No. 42 at 9 (conceding that Carmona may rely on lay testimony to prove his simple medical conditions such as cervical and lumbar sprains and evidence of his emergency room visit and April 8, 2019 visit to Rossel medical clinic). The first question the court must address is whether an expert opinion is required under the facts of this case.

It is undisputed that Carmona complained of "back pain" immediately after the accident.  ECF No. 43-5 at 1 (describing his injury as "back pain" in his crash report completed April 4, 2019—the day of the accident); Carmona Dep. 110:10–13. There is no evidence that he

complained of broken bones, lacerations, or other observable injuries at or immediately after the time of the accident. He was not transported by ambulance after the accident. Carmona Dep. 113:10–12. The police did not make a report. *Id.* at 107: 21–24. He got himself to the ER and initially received very conservative treatment, including a topical pain cream. *Id.* at 120:21–25.

A month later, however, Carmona was diagnosed with abnormal straightening of the cervical and lumbar spine curvature, herniations of the cervical and lumbar spine, fluid in the facet joints of the lumbar spine, and an acute central annular tear of the lumbar spine. ECF No. 43 at 5; ECF No. 42 at 4; ECF No. 43-7 at 2–5. He underwent numerous back injections and surgery as treatment for those conditions. Carmona Dep. 122:1–4, 126:14–15; ECF No. 43 at 5–6. These conditions are precisely the sort of conditions identified in *Lara v. Bui* as being "neither common nor the type of basic injuries for which expert testimony regarding [causation] is unnecessary." *Lara*, 2023 WL 2249205, at \*6. This is not a case of bone broken at the time of the accident requiring surgery a month later. Rather, it is a case involving very little property damage and a refusal by police to even prepare a report. An expert is required to "link [the] event [to Carmona's] physical condition." *Lara*, 2023 WL 2249205 at \*4. Moreover, the court cannot assume that Carmona's complex medical conditions were caused by the accident merely because they were diagnosed after the accident. *See Guevara*, 247 S.W.3d at 667–68.

A medical expert opinion on causation is required to prove that Carmona's complex medical conditions diagnosed on or after May 8, 2019, were cause by the accident.

### ii.   *Carmona Has Presented No Expert Evidence of Causation*

In the motion to re-urge their earlier motions, Defendants argue that Carmona has identified only his treating physicians as experts,

none of whom offers an opinion on causation. ECF No. 72 at 3–4.[3] In his combined response, ECF No. 80, Carmona cites several medical records as evidence of causation. The court considers each. The court also considers the medical records cited in Carmona's earlier response to the motions, ECF No. 44 at 4. Finally, the court will consider Carmona's expert disclosures, ECF No. 45-1.

Carmona cites Dr. Remi Nader's September 13, 2019 Operative Report. ECF No. 42-8 at 7–9. In the "indications" section of the report, Dr. Nader states that Carmona presented "with some lower back pain radiating down to his buttocks, legs, and hips. It started after a motor vehicle accident he sustained in April 2019 whereby he was rear ended." *Id.* at 7. The rest of the report describes the treatment. Nowhere does Dr. Nader state that the pain was caused by the accident.

The court next considers Dr. Omar Vidal's November 12, 2019 Procedure Notes. ECF No. 42-9 at 2–5. In the clinical history section of that record, Dr. Vidal states that Carmona "was involved in an accident. As a result of that accident he injured his lower back." *Id.* at 2. The remainder of the record describes the procedure performed and the findings of the procedure. Nowhere does Dr. Vidal engage in any analysis of how the accident may have caused Carmona's injuries. Nor does he make any attempt to exclude other possible causes.

Also identified is Crystal Thibodeaux, N.P.'s April 8, 2019 Initial Medical Report. ECF No. 72-1 at 1–2. The report states only that "[a]fter the collision, [Carmona] started having neck and back pain." *Id.* at 1. It is not clear to the court how this record, prepared only four days after the accident and reporting only that Carmona was in pain, has any bearing on the complex conditions diagnosed a month later that are the subject of the motions under consideration.

---

[3] Defendants also argue that Carmona's treaters are not qualified to offer opinions on causation. The court need not reach the issue of whether Carmona's experts are qualified.

Carmona cites Dr. Kristin Coleman's May 8, 2019 report of Carmona's lumbar spine MRI results. ECF No. 72-1 at 7–8. The report details the MRI results but says nothing about causation. The same is true of Dr. Coleman's May 8, 2019 report of Carmona's cervical spine MRI results. ECF No. 72-1 at 9–10.

N.P. Thibodeaux's May 10, 2019 Progress Note, ECF No. 72-1 at 11–12, states in the "history of injury" section that Carmona "follows up today for an automobile collision, which occurred on 4/3/19." The note goes on to detail the findings of a physical examination and to list Carmona's diagnoses but says nothing about causation or other causes, such as pre-existing conditions or intervening causes. *Id.*

Progress notes from August 28, 2019, ECF No. 80-1 at 18–23, are no more helpful than the rest of the records Carmona submitted. In the "Collision Information" section, the notes states "Carmona was involved in a motor vehicle collision on 4/3/19 after which he reported symptoms. Anthony Carmona was restrained, who was rear-ended. The patient denies any [loss of consciousness] and air bags were not deployed." *Id.* at 18. The rest of the notes describe Carmona's symptoms, examination findings and treatment history. There is no analysis of causation.

The court turns to Carmona's expert disclosures. ECF No. 45-1. With respect to Dr. Coleman, the disclosure states "Dr. Coleman examined the Cervical MRI and Lumbar MRI," and describes Dr. Coleman's findings. *Id.* at 8. It does not mention causation. *Id.* As for Dr. Vidal, the disclosure lists his diagnoses, but does not mention causation. *Id.* The disclosure states that Dr. Nader "will testify that Plaintiff came to see him after four months of physical therapy and chiropractic care." *Id.* at 9. The disclosure states that Dr. Nader will testify about his recommendations as well as the surgery he performed. *Id.* There is no mention of causation. *Id.* As for Dr. Tariq, the disclosure states that "Plaintiff came to see him regarding neck pain." *Id.* at 10. The disclosure describes Dr. Tariq's recommendations and treatment, but not causation. *Id.* According to the disclosure, "Dr. Mandy Ngo will testify

that from April 11, 2019 until October 17, 2019, Plaintiff was treated by her clinic for injuries sustained in a motor vehicle accident." *Id.* at 11. There is no mention that Dr. Ngo will testify about causation or her reasons for believing that the accident caused Carmona's injuries. *Id.* The same is true of the disclosure's discussion of Dr. Rossel's testimony. It states only that "Dr. Anibal Rossel will testify that from April 8, 2019 until September 16, 2020, Plaintiff was treated by her clinic for injuries sustained in a motor vehicle accident." *Id.* at 11–12. There is no mention or analysis of causation. *Id.* The wording is nearly identical with respect to Dr. John Taylor. *Id.* at 12. Finally, the disclosure does not say that Dr. William High will testify about causation. *Id.*

The court has reviewed the records cited and many more that were not cited. Carmona has not identified any expert that will testify about causation. All the experts identified are Carmona's treating physicians. Of course, a treating physician may testify about what he or she did and saw before, during, and after the treatment. A treating physician may only testify about causation to the extent that determining causation was a necessary part of the treatment, however. *Fielden v. CSX Transp., Inc.,* 482 F.3d 866, 870–71 (6th Cir. 2007) (reasoning that a treating physician may testify without an expert report only to treatment observations and medical record review up to and including the treatment). There is no indication that any of the physicians needed to identify the source of Carmona's injuries to treat them. There is no indication that any of the treaters did anything more than take Carmona's word for the cause of his injuries. None of the treaters have explained "to a reasonable degree, how and why the breach caused the injury based on the facts presented." *Jelinek*, 328 S.W.3d at 539–40. There is no discussion of the facts or data on which these doctors relied. All of the statements discussed above are conclusory and are not competent evidence of causation. Accordingly, none of Carmona's treating physicians may testify about causation of the complex medical conditions diagnosed on or after May 8, 2019. The motion to exclude, ECF No. 42, is **GRANTED**.

Other than the treating physicians, Carmona offers only his own lay opinion about causation. That is not competent evidence to establish causation of the complex medical conditions that are at issue in this motion. *See Lara*, 2023 WL 2249205 at *6 (concluding that when expert evidence of causation is required, the plaintiff's lay testimony cannot fill the gap). Carmona has thus produced no evidence of causation with respect to the complex medical conditions that are the subject of the instant motions. Therefore, the court recommends that the motion for partial summary judgment, ECF No. 43, be **GRANTED**.

### 3. Defendants' Motions to Exclude Evidence of Charges

Defendants seek to exclude certain medical expenses under Texas Civil Practice and Remedies Code Section 41.0105. ECF Nos. 61–62. To the extent that the medical expenses at issue have not been excluded under Part 2, above, the motions are **DENIED** without prejudice to re-urging the motions at the time of trial.

### A. Background

After the accident, Carmona received medical treatment—and incurred associated expenses—from International Center for Neuroscience (ICN), Altus Houston Hospital (Altus), and Imperial Surgical Center (Imperial). ECF No. 65 at 1 § I; ECF No. 67-1 at 2 § I. Carmona has not paid these providers, and they have since sold Carmona's medical receivables, at far lower than the billed amount, to a factoring company called Surgicare. ECF No. 61-4 at 5–6; ECF No. 61-5 at 5–6; ECF No. 62-3 at 5–6; ECF No. 26-1 at 1. Defendants now seek the exclusion of all charges in excess of the purchase amounts paid by Surgicare. ECF Nos. 61–62.

### B. Discussion

Under Texas law, a personal injury plaintiff's "recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the [plaintiff]." Tex. Civ. Prac. & Rem. Code § 41.0105; *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011). The Texas Supreme Court has stated that "actually paid or incurred" means

"expenses that have been or will be paid[] and excludes the difference between such amount and charges the service provider bills but has no right to be paid." *Haygood*, 356 S.W.3d at 397. In determining what is paid or incurred, courts consider stipulations, the face of the medical bills and records themselves, affidavits, testimony, or some combination of these sources. *Metro. Transit Auth. v. McChristian*, 499 S.W.3d 846, 853 (Tex.App.—Houston [14th Dist.] 2014, no pet.). While the Texas Supreme Court has not applied section 41.0105 to a case such as this one involving factoring, the Fourteenth Court of Appeals has held that "in a factoring case, where the record indicates that the claimant remains liable for the amounts originally billed by the medical provider, such amounts are recoverable medical expenses under section 41.0105, and evidence showing the amounts billed by the medical provider is admissible." *Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 604 (Tex.App.—Houston [14th Dist.] 2015, pet. denied).

Defendants' motion relating to ICN and Altus argues that, despite bills totaling $274,744.35, ICN and Altus "accepted a total of $27,600 [from Surgicare] as *payment for services provided to Plaintiff*." ECF No. 61 at 1–2 (emphasis added). They similarly argue that Imperial "accepted a total of $2,400 [from Surgicare] as *payment for services provided to Plaintiff*," despite bills totaling $33,701.50. ECF No. 62 at 1 (emphasis added). Defendants point out that there are no written communications or documentation of the agreements between Surgicare and the providers and conclude that none of the providers actually assigned their accounts receivable, and that all the providers are currently owed no money for their services. ECF No. 61 at 1–2. As a result, Defendants conclude that Carmona may now only recover the amounts paid by Surgicare under section 41.0105.

The ultimate question here is whether Carmona remains liable for the original amounts billed by his medical providers. *Katy Springs & Mfg., Inc.*, 476 S.W.3d at 604. There is some evidence that he does. It is true that Carmona does not owe anything directly to the providers

because the providers were paid by Surgicare. ECF Nos. 61-4 at 5–6 (ICN); 61-5 at 5–6 (Altus); 62-3 at 5–6 (Imperial). But Surgicare maintains that Carmona still owes Surgicare, which intends to collect the full debt from Carmona. ECF No. 26-1 at 3–4. If Carmona is liable to Surgicare, he may be entitled to recover the amount he owes in damages. However, there is a fact question as to whether Surgicare has been assigned the right to collect from Carmona, given the complete lack of documentation of an assignment. To grant Defendants' motion at this time would require the court to credit the affidavit testimony of Surgicare's corporate representative. This issue is thus better decided at trial.

Defendants argue that, to the extent a factoring agreement exists between the providers and Surgicare, because it is not written, it is unenforceable under the Statute of Frauds. ECF No. 66 at 1. Defendants argue that, because Plaintiff may later successfully raise the Statute of Frauds as a defense against Surgicare's attempts to collect from him, Defendants cannot now be held liable for those amounts in this lawsuit. Defendants have not cited any cases in support of their position. It appears to the court that the argument depends on the outcome of some future litigation between Carmona and Surgicare. Thus, the issue is not properly before the court. In any event, even if Defendants could raise these arguments, it is doubtful whether a factoring agreement falls within the scope of the Statute of Frauds, which requires a signed writing for "an agreement, promise, contract, or warranty of cure relating to *medical care or results thereof* made by a physician or health care provider as defined in Section 74.001, Civil Practice and Remedies Code." Tex. Bus. & Com. Code § 26.01(8) (emphasis added). The agreement here is between Surgicare and the providers on accounts receivable, not between the providers and Carmona. Defendants have not provided any cases or reasoning to support the proposition that an agreement of the sort under consideration should be considered to relate to Carmona's medical care.

Defendants also argue that the court should not consider the affidavit of Surgicare's corporate representative, Nestor Martinez, because he was not disclosed as a fact witness. ECF No. 66 at 2–3. Defendants state that "[t]here is no justification for Plaintiff's failure [to disclose Nestor Martinez as a fact witness], and the harm [of permitting his use/testimony] would be significant." ECF No. 66 at 2–3; *see also* Fed. R. Civ. P. 37(c)(1). It is the undersigned's strong preference that cases be resolved on their merits. Defendants have been aware of Surgicare's involvement in this case for quite some time. They sought discovery regarding factoring companies, and eventually Surgicare specifically, through depositions by written questions, subpoenas for document production, and oral deposition testimony from Carmona's providers. ECF Nos. 61-4, 61-5, 61-6, 62-3, 62-4. Without further details regarding prejudice or harm to Defendants, the court declines to exclude Martinez's affidavit. Moreover, because Martinez could testify to the facts in his affidavit at trial, the court declines to exclude the affidavit as hearsay.

Defendants' Motion to Exclude Evidence of Charges from International Center for Neuroscience and Altus Houston Hospital, ECF No. 61, and Defendants' Motion to Exclude Evidence of Charges from Imperial Surgery Center, ECF No. 62, are **DENIED** without prejudice. This applies only to the extent that the court's decision in Part 2 leaves any charges remaining in the lawsuit.

### 4. *Plaintiff's Motion to Exclude Expert Testimony of Dr. Mathew Greenston*

#### A. Background

Defendants designated Dr. Mathew Greenston, M.S., M.D., FACEP, as an expert in "emergency medicine and injury causation biomechanics." ECF No. 73 at 2; ECF No. 73-1 at 4. In addition to being a medical doctor, Dr. Greenston holds a Bachelor of Science in Mechanical Engineering, a Master of Science in Bioengineering, and is certified in traffic accident reconstruction. ECF No. 76-1 at 1–4.

Carmona seeks to exclude Dr. Greenston based on his qualifications. Carmona argues that Greenston cannot provide expert engineering testimony because he does not hold a professional engineering license. ECF No. 73 at 3.

### B. Discussion

Carmona relies on the Texas Engineering Practice Act (TEPA), Tex. Occ. Code § 1001.001, *et. seq.*, and argues that a witness must hold a professional engineering license to offer expert testimony in the area of engineering. ECF No. 73 at 3–9. Rather than regulate the use of evidence in courts, TEPA regulates the practice of Engineering with the purpose of protecting the public health, safety, and welfare. Tex. Occ. Code § 1001.004(b)(1). TEPA states that only a licensed person may engage in the practice of engineering, which is defined to include "providing an expert engineering opinion or testimony." Tex. Occ. Code §§ 1001.003(c)(1), 1001.004(c)(2)(A). But the statute contains an exception. It "does not[] prohibit or otherwise restrict a person from giving testimony or preparing an exhibit or document for the sole purpose of being placed in evidence before an administrative or judicial tribunal, subject to the board's disciplinary powers." Tex. Occ. Code § 1001.004(e)(2).

Intermediate appellate courts in Texas have held that witnesses without an engineering license may testify as engineering experts. In *Tidwell v. Terex Corp.*, the First Court of Appeals stated, "it is well settled that one need not have a license to qualify as an expert witness" under Texas Rule of Evidence 702. *Tidwell v. Terex Corp.*, No. 01-10-01119-CV, 2012 Tex. App. LEXIS 7724, at *32–*33 (Tex.App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (citing *State v. Northborough Ctr., Inc.*, 987 S.W.2d 187, 194 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) (finding such testimony to be within TEPA's testimonial exception)); *see also Fresh Meats, Inc. v. Abdi*, No. 07-12-00546-CV, 2014 Tex. App. LEXIS 5693 (Tex.App.—Amarillo May 28, 2014, pet. denied).

Plaintiff's Motion to Exclude Expert Testimony of Dr. Mathew Greenston, ECF No. 73, is **DENIED**.

### 5. Conclusion

For the reasons stated in this memorandum, the court **GRANTS** Defendants' motion to re-urge. ECF No. 72. Defendants' motion to exclude evidence, ECF No. 42, is **GRANTED**. Accordingly, the court recommends that Defendants' motion for partial summary judgment, ECF No. 43, be **GRANTED**.

To the extent that medical charges remain at issue, the court **DENIES** Defendants' motions to exclude evidence of charges without prejudice to re-urging the motion at the time of trial. ECF Nos. 61, 62.

The court **DENIES** Plaintiff's motion to exclude testimony of Dr. Mathew Greenston. ECF No. 73.

The parties have fourteen days from service of this memorandum to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on June 15, 2023.

_____

Peter Bray
United States Magistrate Judge